UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIXIE L. DUPREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:10-cv-01450-TWP-TAB |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Dixie L. Dupree ("Dupree"), requests judicial review of the decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), which denied Dupree's application of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 301, *et seq.* For reasons set forth below, the Commissioner's decision is **AFFIRMED.**

### I.  BACKGROUND

**A.  Procedural History**

In May 2007, Dupree filed applications for SSI and DBI, wherein she alleged that she became disabled on April 18, 2007 due to an onset of atrial fibrillation, knee problems, and chronic fatigue. (R. 136). According to Dupree, these conditions prevent her from being able to work because she tires easily, and cannot stand for more than two to three minutes at a time. (R. 136). Dupree's initial claims were denied on July 16, 2007. (R. 55). On August 7, 2007, she submitted an application for reconsideration which was denied on October 3, 2007. (R. 63-66). Dupree filed a request for an administrative hearing on December 5, 2007 and the matter was heard by video teleconference on October 23, 2009, before Administrative Law Judge Gregory

M. Hamel, ("the ALJ"). (Tr.73, 8). In addition to Dupree, her attorney, and the ALJ, Michael Blankenship, a vocational expert, also appeared at the hearing via telephone. (R. 8.)

On December 4, 2009, the ALJ found that Dupree suffered from the severe impairments of atrial fibrillation, obesity, and degenerative joint disease in the knees. (R. 11.) The ALJ, however, found that the medical evidence did not suggest Dupree could not ambulate effectively or that she was unable to perform fine and gross movements effectively. *Id.* In addition, the ALJ found that Dupree's atrial fibrillations were controlled by medication. *Id.* Accordingly, the ALJ found that Dupree possessed a residual functional capacity to perform a full range of light work and thus, was not disabled as defined within the Social Security Act. (R. 11-14.) On January 7, 2010, Dupree requested the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") to review the ALJ's decision. On September 15, 2010, the Appeals Council denied Dupree's request for review of the ALJ's decision. (R. 1-3). Following denial of review, the ALJ's decision became the final decision of the Commissioner. (R. 1). On November 10, 2010, pursuant to 42 U.S.C. § 405(g), Dupree filed a complaint with the Southern District of Indiana for judicial review of the Commissioner's final decision.

**B.     Dupree's Medical/Personal History**

Dupree was born on July 13, 1954, and completed high school in 1972, thus, making her 55 years old at the time of the ALJ's decision (R. 132, 140.) Between the years of 1994 and 1999, Dupree worked as a part-time general clerk in the office of her local church (R. 39, 137) and between the years of 2001 and 2007, Dupree worked on a seasonal basis as a tax form preparer for H & R Block. (R. 137). Dupree explained that she stopped working in April 2007 due to her medical conditions (R. 136). Sometime after April 2007, she did attempt to return to

work at H & R Block. (R. 34). However, due to her medical conditions, she was unable to work for more than six days. *Id.*

On October 30, 2006, Dupree sought treatment and was admitted to the emergency room of St. John's Hospital, with a complaint of shortness of breath over a period of six weeks prior to her admission to the emergency room. (R. 180.) In addition, Dupree explained to the examining physician, Dr. Sunil J. Juthani, M.D., that she easily became tired and had recently begun developing chest discomfort. *Id.* Upon examination by Dr. Juthani, Dupree was diagnosed with atrial fibrillation with rapid ventricular rate, and significant arthritic problems in both knees; however, Dr. Juthani explained that Dupree was in no apparent distress. (R. 181.) Dr. Juthani prescribed Dupree medication to control her atrial fibrillation and concluded that he would not pursue electrical cardioversion until Dupree had adequate coagulation. (R. 181-82.) On November 3, 2006, Dupree was discharged from the hospital and Dr. Mukund D. Patel, M.D., explained that although Dupree still suffered from atrial fibrillation, she was to remain on the prescribed medication for three to four weeks before undergoing electrical cardioversion. (R. 179.) Dr. Patel recommended that Dupree undergo the electrical cardioversion at that time. *Id.*

On June 19, 2007, Dupree returned to St. John's Hospital and underwent x-rays of both knees. (R. 223.) The x-ray studies indicated findings that were "compatible with marked degenerative joint disease" with respect to both knees. *Id.* On July 11, 2007, at the request of the Indiana Disability Determination Bureau ("IDDB"), Dupree attended a consultative physical examination administered by Dr. Wail Bakdash, M.D. (R. 191-193.) Dr. Bakdash diagnosed atrial fibrillation, controlled by medication, morbid obesity, and bilateral knee pain due to possible osteoarthritis, however, with no restriction of knee movement. (R. 192.) Dr. Bakdash concluded that Dupree's gait and posture were normal, and Dupree had no ataxia or unsteadiness

3

and was able to stand on her heels and toes without difficulty. *Id.* Dr. Bakdash explained that Dupree was able to grasp, lift, carry, and manipulate objects in both hands, and perform repeated movements with both feet. *Id.* Finally, Dr. Bakdash concluded that Dupree was able to bend over without restriction, squat half way, and was able to sit, stand, and walk normally. *Id.*

On July 12, 2007, Dr. J.V. Corcoran, M.D., reviewed Dupree's claim file and performed a Physician Residual Functional Capacity Assessment form on behalf of the IDDB (R. 196-203). Dr. Corcoran concluded that Dupree could occasionally lift or carry weights of up to fifty pounds and frequently lift or carry weights of up to twenty-five pounds (R. 197). Furthermore, Dr. Corcoran determined that Dupree could stand/walk for a total of about six out of eight hours in a given work day and that Dupree could sit for a total of about six hours in an eight hour work day. *Id.* Finally, Dr. Corcoran concluded that Dupree had no limitation in her ability to push or pull with her hands or feet, and had no postural, manipulative, visual, communicative, or environmental limitations as defined in his assessment (R. 197-200). On October 1, 2007, Dr. B. Whitley, M.D. reviewed all of the evidence in Dupree's file and affirmed the assessment of Dr. Bakdash (R. 207).

Dupree went to the emergency room at St. John's Hospital on July 1, 2009 for a boil located on her buttocks. She informed the medical personnel that the boil had been present for two weeks, and that her son also had a boil one month prior to July 1, 2009 (R. 215-16). The medical records from this visit explain that Dupree had no murmurs, gallops or irregular rhythm, nor did Dupree suffer from cyanosis, tenderness, edema or swelling in her extremities (R. 216). Dupree was prescribed medications (Keflex, Bactrim DS and Lortab) and informed that she should return to the emergency room if her condition worsened. (R. 215.) On September 15,

4

2009, Dupree was seen by Dr. Elizabeth Glaser[1], M.D., where Dupree complained of swollen legs, fatigue, and weakness. (R. 209-10.) As a result, Dr. Glaser adjusted Dupree's medications. *Id.* On October 9, 2009, Dupree underwent x-ray scans of both of her knees, where such request was ordered by Dr. Glaser (R. 212). The x-ray scans showed that Dupree suffered from marked degenerative joint disease in the left knee and prominent degenerative joint disease in the right knee. *Id.*

## II. STANDARD OF REVIEW

To be eligible for disability benefits, a claimant must prove that he has a disability under 42 U.S.C. § 423. Specifically, the term "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical condition or impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. Pursuant to the five-step sequential test, the claimant bears the burden of proof at steps one through four; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The test is set forth in 20 C.F.R. § 404.1520, and provides as follows:

1. If the claimant is employed in substantial gainful activity, then claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meet the duration requirement, the claimant is not disabled.

---

[1] The letterhead of the general history and physical history form printed by the office of Dr. Glaser lists Dr. Glaser's name as Dr. Elizabeth S. Glaser, M.D. However, Dupree's attorney identified Dr. Glaser as Dr. Elizabeth Brater, M.D. (R. 208-210), and the ALJ identified Dr. Glaser as Dr. Elizabeth Brater, M.D. (R. 13). In this opinion, this Court will use the correct spelling of the physician's name and will henceforth refer to the physician as Dr. Glaser.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.
4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The Social Security Act, specifically, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). A court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). The court will "reverse the ALJ's findings only if they are not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Nelson*, 131 F.3d at 1234. In reviewing the ALJ's findings, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* at 1234. While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Further, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, when the ALJ makes a decision, he "must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ must also sufficiently explain his assessment of the evidence in order to allow the reviewing court to trace the path of reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). If adequate discussion of the issues is not given, the decision will be

remanded. *See Brisco*, 425 F.3d at 351; *see also Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001).

### III.    DISCUSSION

**A.    The ALJ's Findings**

After consideration of all the evidence and based the application for disability and disability insurance benefits filed on May 4, 2007, the ALJ determined Dupree was not disabled pursuant to sections 216(i) and 223(d) of the Social Security Act. In addition, the ALJ determined that based on the application for SSI, Dupree was not disabled pursuant to section 1614(a)(3)(A) of the Act. In making such a ruling, the ALJ made the following findings:

1. The Claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The Claimant has not engaged in substantial gainful activity since April 18, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The Claimant has the following severe impairments: obesity, atrial fibrillation, and degenerate joint disease in the knees (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. The Claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).

6. The Claimant is capable of performing past relevant work as a Tax Preparer (D.O.T. 219.362-070, Sedentary, Semi-skilled); and General Office Clerk (D.O.T.

209.562-010, Light, Semiskilled). This work does not require the performance of work-related activities precluded by the Claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

**B.    Analysis**

Dupree raises the following issues on appeal: (1) did the ALJ erroneously grant "great weight" to Dupree's consultative physical examination performed by Dr. Wail Bakdash on July 11, 2007; (2) did the ALJ fail to discuss and account for the combined impacts of Dupree's morbid obesity along with Dupree's other medically determinable impairments as required by Social Security Ruling 02-01p; and (3) did the ALJ erroneously evaluate Dupree's credibility and thus fail to provide a full and fair adjudication? Each issue is addressed in turn below.

**1.    Did the ALJ erroneously grant "great weight" to Dupree's consultative physical examination performed by Dr. Wail Bakdash on July 11, 2007?**

**a.    The 2007 and 2009 X-ray Reports**

Dupree argues that Dr. Bakdash may have rendered a different opinion with respect to Dupree's condition had he been privy to the June 2007 x-rays. Specifically, Dupree argues Dr. Bakdash's opinion is inconsistent with the severity levels of the June 2007 x-rays and the 2009 x-ray reports. However, the Seventh Circuit articulated in *Shramek v. Apfel*, that "[a] physician's opinion regarding the nature and severity of an impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case." 226 F.3d 809, 814 (7th Cir. 2000); *see e.g.*, 20 C.F.R. § 404.1527(d)(2); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (noting that the ALJ's decision will be affirmed "only if supported by substantial evidence which is evidence 'a reasonable mind might accept as adequate to support a conclusion.'").

Dupree's contention that had Dr. Bakdash reviewed the x-rays from June 2007, he may have rendered a different opinion regarding Dupree's condition, is patent speculation.[2] In conducting Dupree's consultative physical examination, Dr. Bakdash explained that Dupree was able to stand and walk normally, bend without restriction, did not use any assistive devices, and had "no restriction of knee movement." (R. at 192.) Thus, Dr. Bakdash's examination did not reveal any impediments with respect to Dupree's overall agility. *Id.* The June 2007 x-ray report concluded that the findings were compatible with "marked degenerative joint disease" in the left and right knees; however, such report failed to opine upon Dupree's agility and general ability to ambulate with or without restriction due to such a conclusion. (R. at 223.) Thus, the June 2007 x-ray report is limited to its single conclusion of degenerative joint disease in Dupree's left and right knees. This is because any opinion with respect to restriction of movement in the knees, or any restriction in general due to such disease, is conspicuously absent from the June 2007 x-ray report. Therefore, based upon the record before the Court, even if Dr. Bakdash had consulted the June 2007 x-ray report before conducting an examination of Dupree, it is substantially unlikely that this report would serve as a basis for Dr. Bakdash to rescind his initial conclusions.

In addition, the mere fact that the 2007 and 2009 x-ray reports conclude the presence of degenerative joint disease in Dupree's left and right knees, does not render Dr. Bakdash's medical opinion inconsistent with such x-ray reports. This is because Dr. Bakdash never opined

---

[2] Additionally, Dupree contends that the Commissioner's attempt to bolster the ALJ's reliance upon the July 2007 x-ray results by explaining that the reviewing agency physicians were aware of the 2007 x-ray results, is a violation of the Chenery doctrine established in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). Dupree argues that such a violation is present in this case because the Commissioner attempted to support the ALJ's decision with the opinions of the reviewing agency physicians that were subsequently rejected by the ALJ. However, Dupree's reliance on *Chenery* is misguided. Here, the Commissioner's misplacement does not render the ALJ's conclusion incredulous. This is because, as explained *infra*, the ALJ developed a full and fair record in conducting his assessment of Dupree's residual functional capacity. In addition, because the ALJ's assessment and decision were explicitly premised upon "the objective evidence and medical findings established in this record," (R. at 13), and because the district court is not charged with the responsibility to reweigh the evidence or decide questions of credibility, the ALJ's conclusion will not be disturbed. *Kasarsky,* 335 F.3d at 543.

as to whether Dupree suffered from degenerative joint disease in either knee, nor did he discount such a conclusion. (R. at 192.) Instead, Dr. Bakdash concluded that Dupree exhibited no restriction in her ability to walk, stand, and sit normally, nor did she exhibit any restriction in knee movement. *Id.* While the 2007 and 2009 x-ray reports indicate that Dupree suffers from degenerative joint disease in both knees, they do not opine as to agility or restriction issues evident with Dupree. (R. at 212, 233.) Therefore, the evaluative report of Dr. Bakdash and the preceding two x-ray reports merely present alternative evidentiary concerns for the hearing officer to properly weight. *See Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1311 (7th Cir. 1993) ("'[R]esolution of evidentiary conflict lies within the exclusive domain of' the hearing officer,…so long as these factual findings are supported by substantial evidence.") (internal citation omitted).

        **b.**        **The 27 Month Delay and Boil Discovery**

Next, Dupree argues that because the ALJ conducted her hearing 27 months following her consultative examination with Dr. Bakdash, Dupree's condition may have worsened. In this case, despite the lapse of time between Dupree's consultative examination with Dr. Bakdash and Dupree's ALJ hearing, the entire medical evidence of record fails to conclude that Dupree became less agile and unable to walk, sit, or stand normally as compared to Dr. Bakdash consultative examination. Moreover, the ALJ conducted Dupree's hearing on December 4, 2009, and less than two months prior to the date of the hearing, on October 9, 2009, Dr. Elizabeth Glaser, M.D., concluded that Dupree suffered from marked degenerative joint disease in the left knee and prominent degenerative joint disease in the right knee. (R. at 212.) However, although the ALJ specifically recognized Dr. Glaser's conclusions in rendering his decision, (R. at 13), such conclusions patently fail to identify any restriction or limitation upon

10

Dupree's agility and overall mobility as a result of such a condition. Thus, the lack of such identification clearly indicates that there is no basis upon which to premise a comparison of the conclusions of Dr. Bakdash with those of Dr. Glaser.

Furthermore, because the ALJ specifically confronted the 2009 x-ray studies performed by Dr. Glaser, this defeats Dupree's contention that the ALJ failed to do so. This is because the ALJ explained that his assignment of great weight to the conclusions of Dr. Bakdash was "consistent with the medical evidence viewed as a whole." (R. at 13.) Thus, the ALJ not only confronted the existence of the 2009 x-ray studies performed by Dr. Glaser, he also explained his reasoning for not assigning such studies the same level of deference assigned to Dr. Bakdash's conclusions. Even if reasonable minds could differ with respect to whether Dupree's condition may have worsened, the Court must affirm the ALJ's decision to deny benefits if such decision is supported by substantial evidence. *See Brooks v. Chater,* 91 F.3d 972, 978 (7th Cir. 1996). Due to the paucity of evidence in support of Dupree's conclusion that her condition may have worsened during the relevant time period, and the uncontradicted evidence of Dr. Bakdash, Dupree's conclusion is rendered as no more than unadulterated speculation. Therefore, because this Court cannot "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner," this Court will not disturb the conclusion of the ALJ. *See Kasarsky*, 335 F.3d at 543.

Additionally, Dupree argues that the discovery of a boil on her buttocks and treatment for such a wound in July 2009 supports her prior conclusion that her condition may have worsened during the 27 month period between her consultative examination with Dr. Bakdash and her ALJ hearing. Analogous to the argument above, the Court finds this argument equally unpersuasive. Here, Dupree points to no evidence illustrating a connection between the presence of the boil on

11

her buttocks and her alleged limitations with respect to agility. Specifically, the medical records from her visit when the boil was discovered do not conclude that the boil was a result of Dupree's alleged immobility or in any manner related to the presence of joint degeneration in her knees. As in the preceding analysis, Dupree's contention unequivocally lacks substance due to the paucity of evidence buttressing such contention thereby rendering her conclusion as patent speculation. The medical evidence of record illustrates that the conclusions of Dr. Bakdash are not inconsistent with such evidence and are fully credible. Therefore, because the opinion of Dr. Bakdash remains clearly uncontradicted by the remainder of the medical evidence of record, in the aggregate, the medical evidence of record unequivocally supports the ALJ's decision to grant "great weight" to the opinion of Dr. Bakdash pursuant to 20 C.F.R. § 404.1527(d)(2).

  **2. Did the ALJ fail to discuss and account for the combined impacts of Dupree's morbid obesity along with Dupree's other medically determinable impairments as required by Social Security Ruling 02-01p?**

Dupree further contends that the ALJ failed to meet the requirements of Social Security Ruling 02-01p by neglecting to discuss the combined impact of Dupree's morbid obesity in combination with her knee damage, atrial fibrillation, and swelling. As explained by the Seventh Circuit in *Scott v. Barnhart*, 297 F.3d 589 (7th Cir. 2002), ALJs are required to "articulate their assessment of the evidence to assure us that they considered the important evidence and ... to enable us to trace the path of their reasoning." *Id.* at 595. Furthermore, the court reiterated the maxim requiring ALJs to construct a "logical bridge" between the available evidence and the ALJ's conclusion for the purpose of permitting a reviewing court to assess the validity of the ALJ's findings and to afford a claimant meaningful judicial review. *Id; see also Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).

In this case, the ALJ specifically determined that Dupree's impairments "impose more than a minimal restriction on [her] ability to perform basic work activities." (R. at 11.) Additionally, the ALJ determined that Dupree's obesity was a "severe" impairment, and that such an impairment, in combination with other medically determinable impairments, "significantly limits" an individual's mental and physical ability to perform basic work activities. *Id.* Furthermore, the ALJ specifically referenced Social Security Ruling 02-01p and explicitly stated that in evaluating Dupree's obesity as a severe impairment, he gave consideration to "all of the foregoing factors," where such foregoing factors were listed as atrial fibrillation and degenerative joint disease in the knees, during the sequential evaluation process. *Id.* As explained by the Seventh Circuit in *Martinez v. Astrue*, 630 F.3d 639, 698 (7th Cir. 2011), "an applicant's disabilities must be considered in the aggregate." *Id.* Because the ALJ explicitly gave particular consideration to Dupree's obesity in combination with her remaining medically determinable impairments, the Court finds the ALJ's path of reasoning to be apparent.

Additionally, Dupree asserts that *Villano v. Astrue,* 556 F.3d 558 (7th Cir. 2009), is instructive in illustrating the Seventh Circuit's intolerance of perfunctory analyses with respect to the evaluation of the impact of morbid obesity upon damaged knees pursuant to Social Security Ruling 02-01p. While Dupree's contention is factual, her reliance upon *Villano*, claiming the ALJ failed to account for the combined effects of her obesity in combination with her additional impairments, is misplaced. In *Villano*, the court explained that the ALJ failed to analyze the combined effect of Villano's obesity and her other impairments, and as such, rendered improper inferences about Villano's ability to sit based solely on a lack of objective medical evidence. *Id.* at 563.

Here, unlike in *Villano*, the ALJ explicitly took into account Dupree's atrial fibriallation and degenerative joint disease in both knees in evaluating Dupree's obesity as a severe impairment. (R. at 11.) In addition, the ALJ explicitly stated that his ultimate conclusion with respect to Dupree's residual functional capacity was premised upon objective medical evidence established in the record. *Id.* at 13. Thus, the ALJ's conclusions were not merely premised upon a lack of objective medical evidence, as in *Villano*, but were unequivocally supported by the evidence of record as explained by the ALJ. *Id.* Therefore, the Court rejects Dupree's argument relating to a failure to adhere to Social Security Ruling 02-01p.

### 3. Did the ALJ erroneously evaluate Dupree's credibility and thus fail to provide a full and fair adjudication?

In conducting an assessment of a claimant's credibility, an ALJ considers a myriad of factors, including, *inter alia*, daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; medications taken; and treatment. 20 C.F.R. § 404.1529(c)(3). SSR 96-7p, 1996 WL 374186 (July 2, 1996). In addition, the ALJ's determination of credibility is entitled to considerable deference and will be overturned only if it is patently wrong. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). In this case, Dupree's first argument is that the ALJ's statement that Dupree has a poor work history is not supported by the record and is a misrepresentation of the evidence. However, it is important to bear in mind that the Court will uphold the ALJ's decision if it is supported by substantial evidence. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Here, the evidence of record clearly indicates that during the relevant period of fifteen years prior to the date of the hearing before the ALJ, Dupree earned no wages during particular years and minimal earnings in other years. (R. at 127.) In addition, there is no evidence of record to buttress Dupree's

contention that she was required to work seasonally to meet familial obligations. Thus, the evidence described above is sufficient to allow the Court to trace the ALJ's path of reasoning.

Next, Dupree asserts that the ALJ's statement explaining that there is no evidence Dupree actively worked to lose weight is unsupported by the record and is a misrepresentation of the evidence. Dupree also contends that there is no basis for the ALJ to assume that she did not try to lose weight. However, the ALJ explained in his opinion that the record did not provide any evidence that Dupree actively worked to lose weight. (R. at 13.) Thus, the ALJ premised his statement upon an observation with respect to the evidence of record and did not premise his statement upon a blind assumption. (R. at 13.) Because the ALJ's statement is premised upon the evidence of record, the Court grants deference to the AJL's determination and consequently rejects Dupree's argument. Dupree also argues that the ALJ's statement, explaining that there is no evidence Dupree sought free or reduced health care services during the time that she had no health insurance, is unsupported by the record and is a misrepresentation of the evidence. This argument is meritless. This is because the ALJ explained in his statement that the evidence of record does not illustrate that Dupree sought free or reduced health care services during the time she had no health insurance.[3] Thus, the ALJ premised such statement upon the evidence of record, as clearly indicated by his statement, and not upon a mere assumption. (R. at 13.) Because the Court can trace the reasoning of the ALJ with respect to his statement, the Court rejects this argument.

Dupree's final argument is that the ALJ's determination explaining that there is no need for Dupree to use a wheelchair is unsupported by the record and is a misrepresentation of the evidence. Additionally, Dupree argues that the ALJ should have further developed the record to

---

[3] However, Dupree testified during the hearing before the ALJ that she signed up and received health care insurance though a program sponsored by St. John's Hospital following a visit to the emergency room where such health care insurance was provided between June 2009 and December 2009. R. at 13.

offer reasoning to buttress his contention that Dupree had no need for a wheelchair. In the context of a Social Security hearing, "the ALJ has a duty to develop a full and fair record." *Smith*, 231 F.3d at 437. Thus, "an ALJ's decision must be based on consideration of all relevant evidence." *Id.* at 438. Furthermore, the ALJ must also sufficiently explain his assessment of the evidence in order to allow the reviewing court to trace the path of reasoning. *See Rohan,* 98 F.3d at 971.

In this case, this Court believes that the ALJ developed a full and fair record during his evaluation of the merits of Dupree's claim. Specifically, the ALJ discussed Dupree's diagnoses of atrial fibrillation, obesity, noncardiac chest pain, and osteoarthritis where such diagnoses were produced in conjunction with Dupree's hospitalizations during October 2006 and January 2007. (R. at 13.) Furthermore, the ALJ specifically discussed the results of Dupree's x-ray examinations conducted during June 2007 and October 2009 where such results explained that Dupree suffered from marked degenerative joint disease in her left knee and prominent degenerative joint disease in the right knee. *Id.* Additionally, the ALJ explicitly stated that he gave "little weight" to the opinion of J.V. Corcoran, M.D., of the Disability Determination Services because the ALJ believed Dr. Corcoran's report "seem[ed] to overstate the claimant's functional capacity and is out of proportion to the treatment records." *Id.* Ultimately, the ALJ explained that his decision to grant "great weight" to the opinion of Dr. Bakdash was "consistent with the medical evidence viewed as a whole." *Id.* Thus, the ALJ not only explicitly addressed the medical evidence of record, his perspicacious observation of the subtle nuances within each individual piece of evidence permitted the ALJ to appropriately determine the persuasive value of such evidence. For example, the ALJ's discussion and rejection of Dr. Corcoran's assessment as overstating Dupree's functional capacity, explaining that such an assessment was out of

proportion with Dupree's medical treatment records, strongly suggests that he fully and fairly developed the record in making such a determination.

The ALJ explained that the medical evidence strongly suggests there is no need for Dupree to use a wheelchair. (R. at 12.) The ALJ supported his conclusion with reference to observations of several inconsistencies between Dupree's statements regarding her physical capabilities and those observations and recommendations made by the physicians of record. (R. at 13.) Specifically, the ALJ explained that Dr. Bakdash concluded that Dupree did not use an assistive device, walked with a normal gait without unsteadiness, had no swollen joints and was able to get on and off the examination table without difficulty. (R. at 12.) However, the ALJ further explained that one month following Dupree's visit with Dr. Bakdash, Dupree described that she had to use a chair with rollers to move around her home due to swelling in her legs. (R. at 12-13.) In addition, the ALJ explained that Dupree testified that Dr. Glaser advised Dupree to elevate her feet; however, the ALJ explained that the medical evidence of record does not support Dupree's assertion. (R. at 13.) This Court agrees that the presence of such inconsistencies in the record, and the paucity of medical evidence illustrating that Dupree should utilize a wheelchair for mobility further undermine her credibility.

The Court finds that had the ALJ not fully and fairly developed the record, the ALJ would have been unable to make such observations highlighting inconsistencies within the record. Accordingly, based upon the evidence of record, the Court concludes that a reasonable mind would accept the evidence of record as adequate to support the conclusion of the ALJ. *See Diaz* 55 F.3d at 305. Therefore, the Court finds that the ALJ successfully discharged the duty upon him to fully and fairly develop the record and provided Dupree with a full and fair adjudication.

## IV. CONCLUSION

For the reasons stated herein, the decision of the Commissioner of the Social Security Administration is **AFFIRMED.**

SO ORDERED.

DATE: 11/08/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Annette Lee Rutkowski
KELLER & KELLER
annette@2keller.com